UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARDELL SANDERS, JR.,

  Plaintiff,

v.

GENESEE CTY., ET AL.,

  Defendants.
_____/

Case No. 20-cv-13014

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING PLAINTIFF'S FIRST MOTION FOR PRELIMINARY INJUNCTION [#6] AND DENYING PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION [#20]**

### I. INTRODUCTION

Plaintiff Cardell Sanders, Jr. initiated this action against thirteen Defendants: Paul Wallace, Jay Parker, Joe Lee, Shana McCallum, Sean Poole, Lacey Lopez, Alex Minto, David Leyton, Janet McLaren, Officer John Doe 1, John Doe 2, Charter Township of Flint, and Genesee County (collectively, "Defendants"). *See* ECF No. 1. Plaintiff alleges that Defendants deprived him of his constitutional rights after seizing five dogs on his property following complaints of animal abuse. On December 31, 2020, Plaintiff filed his First Amended Complaint alleging several civil rights claims under 42 U.S.C. § 1983 and one state law claim for conversion. *See* ECF No. 18.

Presently before the Court is Plaintiff's First Motion for Preliminary Injunction, filed on December 15, 2020, and Plaintiff's Second Motion for Preliminary Injunction, filed on January 6, 2021. ECF Nos. 6, 20. Both motions are fully briefed. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Therefore, the Court will resolve the instant motion on the briefs. *See* E.D. Mich. L.R. § 7.1(f)(2).

For the reasons that follow, the Court will DENY Plaintiff's First Motion for Preliminary Injunction [#6] and DENY Plaintiff's Second Motion for Preliminary Injunction [#20].

## II. FACTUAL BACKGROUND

On July 8, 2020, an individual called 911 to report concern over the wellbeing of five dogs located at 2582 Bertha Avenue in Flint, Michigan. ECF No. 8, PageID.50; ECF No. 17, PageID.140. The dogs were purportedly without adequate water or food in extreme heat. ECF No. 17, PageID.140. Plaintiff Cardell Sanders, Jr. resides at the Flint, Michigan address and confirms that he owns the five dogs who were in the backyard of his home. ECF No. 6, PageID.50. Defendant McCallum relayed the following information about the dogs' purported condition over the past year:

> From 7/17/2019 to 3/10/2020, Mr. Sanders has had 13 police calls to his home regarding the dogs. These range from barking to loose dogs, videos of the suspect watching his dogs fighting that were placed on Facebook, emaciated puppies, abuse of animals, and dogs in his backyard with no water . . . A

2

> neighbor related that the dogs were kept outside and frequently did not have food, water, or adequate shelter . . . for either heat or freezing weather.

ECF No. 18-2, PageID.227.

Pursuant to the 911 call on July 8, 2020, Defendant officers were dispatched to the Flint home to inspect the dogs' condition. ECF No. 18-2, PageID.225. The police identified five canines in the yard upon their arrival: two Pit Bulls, two Terriers, and one German Shepard.[1] *Id.* According to Defendants, the officers found that the dogs did not have access to any food or clean drinking water. *Id.* Instead, the only water visible "was in a large plastic container filled with dirty green water, and two cooking pots with filthy, bug filled water" and the only evidence of food "was an empty plant pot that had the residue of spoiled food" accessible to one Pit Bull. *Id.* It is undisputed that Plaintiff was not home when the police initially arrived on his property. Finding this situation sufficient to warrant further action, the police contacted Genesee County Animal Control ("Animal Control") to assist the officers with removal of the dogs from the property. *Id.*

About an hour after the initial 911 call, Plaintiff returned to his residence and found Animal Control in the process of the dogs' removal. ECF No. 18, PageID.200. He states that he protested the officers' actions but that, "[a]t one point, Defendant

---

[1] On February 3, 2021, Defendants filed a Notice of Correction clarifying that "the first responding Flint Township Officer initially observed exigent circumstances as to at least one animal in plain view from a neighbor's property." ECF No. 47, PageID.569.

3

McCallum pulled her gun from its holster demanding that Plaintiff give them [the remaining dogs] after Defendants had hit and dragged [one of the dogs] to" the Animal Control van. *Id.* Plaintiff highlights that while he asked to see documentation repeatedly, Defendants did not produce a warrant or citation at the time of the incident. *Id.*

The following day, Plaintiff attempted to retrieve his dogs at the Animal Control Shelter and inquired about the situation at the Flint Township Police Station. *Id.* He was denied permission to regain possession of the dogs. *Id.* He made a second attempt on October 2, 2020 and was informed that one of the dogs was euthanized after a severe heartworm diagnosis. *Id.* Defendants confirm this, stating that "each dog tested positive for heartworm, but one of the dogs was so ill with heartworm that Genesee County Defendants transported it to the Michigan State University Veterinary tertiary facility, where it was determined that the animal was so sick that euthanasia was the best option." ECF No. 17, PageID.141.

Defendants indicate that Plaintiff was advised on July 8, 2020 that criminal charges would be investigated in relation to this incident. ECF No. 43, PageID.503. Defendants further state that a criminal complaint against Plaintiff was authorized on July 30, 2020. *Id.* Plaintiff filed his initial Complaint on November 10, 2020. *See* ECF No. 1. Defendants assert that, "as a result of [a] communication glitch, the criminal complaint and arrest warrant were not sworn out by the police and filed

4

until on or about November 25, 2020." ECF No. 43, PageID.503-504. Plaintiff subsequently filed an Amended Complaint on December 31, 2020 and added two additional counts, including one for retaliation in violation of the First Amendment. *See* ECF No. 18, PageID.211. Plaintiff alleges that state criminal and civil forfeiture proceedings were initiated "[i]n direct response and in retaliation to Plaintiff's constitutionally protected conduct in the filing of the Complaint in this matter." *Id.* at PageID.212.

### III. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Whether to grant such relief is a matter within the discretion of the district court. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

A district court will consider four factors in determining whether to grant a request for a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

None of the factors, standing alone, is a prerequisite to relief; rather, a court must consider the balance of the factors to reach its decision. *See Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003). However, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal" to a movant's motion. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

### IV. DISCUSSION

Plaintiff has filed two separate preliminary injunction motions in this matter. The first asks this Court to enjoin Defendant Genesee County from possessing Plaintiff's dogs and requests their immediate release back to Plaintiff. *See* ECF No. 6, PageID.59. The second seeks an order from this Court enjoining the felony criminal and civil forfeiture prosecutions by Defendants Leyton and McLaren against Plaintiff. *See* ECF No. 20, PageID.266. The Court will address each motion in turn and, as detailed below, will deny both motions and the requested relief.

### A. First Motion for Preliminary Injunction

#### 1. Likelihood of Success on the Merits

Plaintiff argues that the Genesee County Defendants violated his Fourth and Fourteenth Amendment rights by unlawfully seizing his five dogs without a warrant. *See* ECF No. 6, PageID.54-55. Defendants assert that the warrantless seizure was reasonable because exigent circumstances—dogs without food and water in extreme heat—were present. *See* ECF No 17, PageID.145. Further, Defendants argue that

6

they are shielded by qualified immunity because their conduct was not unreasonable under the circumstances. *Id.*

### a. Fourth Amendment (Count I)

The Fourth Amendment does not provide an absolute protection against all seizures—only unreasonable seizures. The governing standard for Fourth Amendment rights is generally whether officers had probable cause for a seizure. *See U.S. v. Place*, 462 U.S. 696, 702-03 (1983). However, a warrantless seizure may be justified if exigent circumstances are present. *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 246 (6th Cir. 2017). In cases involving animals at risk, exigent circumstances may include dogs who are uncontrollable and pose a risk to themselves and others, *id.* at 245, or animals in dangerous physical and environmental conditions, *see United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 490 (6th Cir. 2014) ("[T]he animals were dehydrated and in high heat and without water . . . [a] reasonable officer could believe that this constituted neglect . . . and that the conditions justified the warrantless seizure of the animals.").

Here, the Court finds it persuasive that exigent circumstances existed warranting Defendants' entry onto Plaintiff's property. A neighbor called 911 to report five dogs in the backyard of a home without adequate access to food, water, or shelter in extreme heat. Over ten calls had been made to the police department over the past year related to similar concerning circumstances. *See* ECF No. 18-2,

7

PageID.227. Further, it is undisputed that Plaintiff was not home when the officers first arrived at his home and observed the dogs in the backyard. These facts, coupled with Defendants' observations of extreme heat, animals in distress, and no adequate food or water available, are sufficient to suggest the existence of exigent circumstances. *See United Pet Supply, Inc.*, 768 F.3d at 490 ("Given the high heat and squalid conditions in which the animals were found . . . a reasonable official could believe that the exigent circumstances justified the warrantless seizure of the animals.").

Beyond exigent circumstances, it also appears that Defendants may be entitled to qualified immunity on this claim, as the unreasonableness of the seizure is not immediately apparent in these circumstances. Plaintiff has thus failed to demonstrate a high likelihood of success on his Fourth Amendment claim at this juncture.

### b. Fourteenth Amendment (Count II)

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Notably, "the deprivation of property by state action is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest

8

without due process of law." *Id.* (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 485 (6th Cir. 1995)) (internal quotation marks omitted). Procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Rosen v. Goetz*, 410 F.3d 919, 928 (6th Cir. 2005)). "Although due process generally requires predeprivation notice and hearing, in some extraordinary situations, a valid governmental interest . . . justifies postponing the hearing until after the event." *Nichols v. Wayne Cty., Michigan*, 822 F. App'x 445, 449 (6th Cir. 2020) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993)) (additional quotations and citations omitted).

Plaintiff's Fourteenth Amendment claim suffers from the same initial faults as his Fourth Amendment claim: while due process generally provides for procedural protections before the deprivation of one's property, the right is not absolute. Certain conditions, including emergent circumstances, may justify a seizure prior to a judicial determination on the issue. The instant matter presents such a situation. While Defendants undisputedly seized Plaintiff's dogs without a warrant, there is evidence to suggest that exigent circumstances were present—the dogs were in extreme heat without adequate food or water, and their immediate health could have therefore been in jeopardy. Defendants may reasonably argue that

9

a valid government interest in animal welfare and animal abuse prevention justified the dogs' seizure without a warrant. *See Nichols*, 822 F. App'x at 449.

Given these facts, the Court finds that Plaintiff has similarly failed to demonstrate a high likelihood of success on the merits of his Fourteenth Amendment claim at this stage.

### 2. Irreparable Harm

The Court also finds that Plaintiff has not demonstrated he will suffer irreparable harm if preliminary injunctive relief is not granted. To satisfy this prong of the test, a party must demonstrate that unless the injunction is granted, he will suffer "actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (internal quotations omitted).

Here, Plaintiff claims that he risks "the permanent deprivation of his remaining four dogs" and raises concerns that additional dogs may be euthanized. ECF No. 6, PageID.57. Defendants state that the dogs are currently housed in an animal shelter where they receive consistent food, water, and medical care. ECF No. 17, PageID.148. Defendants further note that each of the dogs was treated for heartworm and, while euthanasia was the only humane option available for one of the dogs, the others have since recovered and are receiving veterinary attention. *Id.*

10

Because the current state court proceedings provide Plaintiff with an opportunity to contest Defendants' seizure and continued possession of the animals, Plaintiff has not demonstrated that irreparable injury of permanent deprivation is actual and imminent. *See Abney*, 443 F.3d at 552. Further, Plaintiff's claims of irreparable injury are based solely on the alleged violations of his constitutional rights but, as discussed above, Plaintiff has not carried his burden of demonstrating such violations at this time. Accordingly, this factor also weighs against issuing a preliminary injunction.

### 3. Harm to Others

Plaintiff next claims that Defendants will not suffer any harm because they do not have an interest in perpetuating unconstitutional conduct by keeping possession of the dogs. *See* ECF No. 6, PageID.58. Defendants counter this argument by noting the substantial risk of harm to the dogs if they are returned to Plaintiff's care. *See* ECF No.17, PageID.149.

The evidence presently before the Court indicates that there is a risk of harm to the animals if they are returned to Plaintiff prior to the completion of the state court actions and the instant matter. Additionally, Defendants have provided the animals with veterinary care for the heartworm diagnoses that purportedly "could have been prevented by Plaintiff with minimal care" prior to this incident. ECF No. 7, PageID.149.

While recognizing Plaintiff's perceived injury—an inability to have the dogs in his possession—the Court nonetheless finds that this injury is outweighed by the substantial risk of harm to the dogs if they were returned at this time. Further, this factor alone is not determinative and cannot overcome Plaintiff's failure to demonstrate a likelihood of success on the merits of his claims. *See Gonzales*, 225 F.3d at 625 ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). Therefore, the third factor does not support issuing a preliminary injunction in this matter.

### 4. Public Interest

Plaintiff finally asserts that issuing an injunction would be in the public interest because "it will protect the due process rights of all dog-owning Genesee County residents." ECF No. 6, PageID.58. However, Plaintiff has not carried his burden of demonstrating that there has been a violation of his constitutional right to due process. Further, there is a competing public interest in ensuring the protection and wellbeing of animals entrusted to the care of Genesee County residents. This interest outweighs the arguments presented by Plaintiff and cautions against the issuance of a preliminary injunction. The Court thus finds that this final factor weighs against granting Plaintiff's requested relief.

Accordingly, the Court will deny Plaintiff's first Motion for Preliminary Injunction.

### B. Second Motion for Preliminary Injunction

#### 1. Likelihood of Success on the Merits

In his second Motion, Plaintiff argues that Defendants initiated criminal and civil forfeiture prosecutions against him in retaliation for the filing of his initial Complaint, in violation of the First Amendment. *See* ECF No. 20, PageID.254. Defendants deny that the prosecutions were causally connected to the filing of Plaintiff's initial Complaint and further assert that this Court must refrain from enjoining state prosecution proceedings under the abstention doctrine. *See* ECF No. 43, PageID.512, 514.

First Amendment retaliation claims require a plaintiff to show that: "(1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). With respect to this third element, the plaintiff must show that "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.*

Here, even recognizing that Plaintiff engaged in the constitutionally protected conduct of filing a civil lawsuit, Plaintiff has not established that Defendants' decision to initiate criminal and civil forfeiture prosecutions was motivated by Plaintiff's exercise of the protected activity. Defendants first note that Plaintiff's

13

state criminal complaint was authorized on July 30, 2020, about three weeks after the initial seizure of the dogs, and long before the filing of Plaintiff's instant action. *See* ECF No. 45, PageID.510.  The outstanding dispute concerns the timing of the filing of Plaintiff's criminal complaint and arrest warrant in state court on November 25, 2020—about two weeks after Plaintiff filed the instant case on November 10, 2020.

The Court acknowledges the short time frame between these two actions, but declines to find the filing of Plaintiff's Complaint was a proximate cause of the subsequent prosecutions at this juncture.  Plaintiff has failed to allege sufficient facts to demonstrate that the prosecutions were motivated by, and not just temporally proximate to, the filing of the Complaint.  *See King*, 680 F.3d at 694.  While Plaintiff argues that Defendants "have failed to provide any evidence to this Court whatsoever that they in fact intended on bringing felony and civil proceedings against Plaintiff in late November, in the absence of Plaintiff's protected activity," Plaintiff must first meet his initial burden to demonstrate his retaliation claim has a likelihood of success on the merits.  ECF No. 46, PageID.561.  He has not done so here.

Further, this Court is persuaded by Defendants' argument that the *Younger* abstention doctrine may be applicable to this claim.  *Younger v. Harris*, 401 U.S. 37 (1971).  The *Younger* abstention doctrine precludes this Court from intervening in state judicial processes in the absence of great and immediate irreparable injury to

14

the federal plaintiff. *Id.* Specifically, "in cases seeking to enjoin ongoing state proceedings—be they criminal, civil, or administrative—federal courts should not exercise jurisdiction" and should consider dismissal of the case in its entirety. *Kish v. Michigan State Bd. of Law Examiners*, 999 F. Supp. 958, 965 (E.D. Mich. 1998) (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)).

In this matter, there are ongoing state judicial proceedings in which Plaintiff may be able to raise his federal claims, including those discussed *supra* for purported violations of the Fourth and Fourteenth Amendment. Plaintiff has not produced evidence at this early stage to suggest the state prosecutions are in bad faith or would fall outside the ambit of *Younger* abstention. Additionally, insofar as Plaintiff's retaliation claim is against Defendants Leyton and McLaren, who are both prosecutors, it appears that both may be absolutely immune from suit; it is well settled that court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *see also Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).

Accordingly, Plaintiff has failed to carry his burden of demonstrating a likelihood of success on the merits of his First Amendment retaliation claim.

### 2. Irreparable Harm

The Court also finds that Plaintiff has failed to show irreparable harm will occur in the absence of a preliminary injunction. Similar to the analysis for

Plaintiff's first Motion, Plaintiff's claims of irreparable injury here are based solely on the allegation that Defendants retaliated against Plaintiff in violation of his First Amendment rights, and Plaintiff has not carried his burden of demonstrating a likelihood of success on this claim at this juncture. Accordingly, this factor also weighs against issuing a preliminary injunction.

### 3. Harm to Others

As in his first Motion, Plaintiff argues that a preliminary injunction presents no risk of harm to Defendants because they are purportedly pursuing unlawful and retaliatory prosecutions. *See* ECF No. 20, PageID.265. But without meeting the standard of establishing a likelihood of success on the merits of his First Amendment claim, the Court is persuaded that the issuance of the injunction may cause substantial harm to others—including the safety of the animals and the orderly functioning of state court proceedings and its officers. Thus, the third factor weighs against Plaintiff's requested relief.

### 4. Public Interest

Plaintiff finally argues that the "public's interest in the preservation of the public's constitutional rights far exceeds the Defendants' and state's interest in continuing a bad faith and constitutionally illegal prosecution[.]" ECF No. 20, PageID.266. While the public inarguably maintains an interest in its constitutional rights, a plaintiff must first demonstrate that a constitutional right has been violated.

Plaintiff Sanders has not done so at this stage. The public interest is thus served by declining to enjoin state criminal and civil forfeiture proceedings with a preliminary injunction from this Court. Plaintiff's requested relief will therefore be denied.

## IV. CONCLUSION

For the reasons discussed herein, the Court **DENIES** Plaintiff's First Motion for Preliminary Injunction [#6] and **DENIES** Plaintiff's Second Motion for Preliminary Injunction [#20].

**IT IS SO ORDERED.**

                                              s/Gershwin A. Drain_____
                                              GERSHWIN A. DRAIN
                                              UNITED STATES DISTRICT JUDGE

Dated: February 9, 2021

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 9, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager