UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARDELL SANDERS JR.,

     Plaintiff,

     v.

GENESEE CNTY., ET AL,

     Defendants.

_____/

Case No. 20-cv-13014

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [#103, #104], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#105]

### I. INTRODUCTION

On December 31, 2020, Plaintiff Cardell Sanders Jr., filed an Amended Complaint pursuant to 42 U.S.C. § 1983, against Defendants Genesee County, Paul Wallace, Jay Parker, and John Doe I (collectively, the "Genesee County Defendants"), and Defendants Flint Charter Township, Shana McCallum, Sean Poole, Lacey Lopez, and John Doe II (the "Flint Township Defendants"). ECF No. 18, PageID.197–199. Plaintiff alleges Defendants violated his First, Fourth, and Fourteenth Amendment rights for seizing his dogs on July 8, 2020 and charging him with animal cruelty. *Id.* at PageID.202–216. He also brings a state law conversion claim against all Defendants. *Id.* at PageID.211.

-1-

Presently before the Court are Plaintiff's Motion for Summary Judgment, Genesee County Defendants' Motion for Summary Judgment, and Flint Township Defendants' Motion for Summary Judgment. ECF Nos. 103, 104, 105. Each party filed their Responses in Opposition to the respective motions. ECF Nos. 110, 111, 112. The parties also filed Reply Briefs. ECF Nos. 117, 118, 119. The Court held a hearing for this matter on May 24, 2022, at 3:30 p.m.[1] For the following reasons, the Court will DENY Plaintiff's Motion for Summary Judgment [#105], GRANT Genesee County Defendants' Motion for Summary Judgment [#103], and GRANT Flint Township Defendants' Motion for Summary Judgment [#104].

## II. FACTUAL BACKGROUND

This is a case about a man and his dogs. The man—Cardell Sanders, Jr.— resided in Flint, Michigan, on July 8, 2020. ECF No. 18, PageID.199. He lived there with two pit bulls, two terriers, and one German Shepard: Bud, Heartless, Titan, Samson, and Isis. *Id.* It is unclear how Mr. Sanders obtained the dogs or where the dogs are from.[2] ECF No. 106-1, PageID.1542–1544.

---

[1] At the hearing, the parties jointly stipulated to dismissing: (1) Defendant Officer Sean Poole from this action, and (2) Plaintiff's Substantive Due Process Clause claim. The Court granted the parties' requests from the bench. As such, Defendant Officer Sean Poole and Count III of Plaintiff's Amended Complaint are dismissed.

[2] Plaintiff asserted his Fifth Amendment protection from self-incrimination throughout his deposition. As discussed *infra*, Section IV.A., Plaintiff's assertion

On July 8, 2020, Genesee County 9-1-1 received a dispatch call about dogs in Plaintiff's backyard without water in extreme heat. ECF No. 104-3, PageID.1444. Plaintiff's property received "several complaints regarding possible dog fighting, neglect, and blight conditions" from neighbors before. ECF No. 103-4, PageID.1272. One 9-1-1 caller "reported puppies were kicked, emaciated, and fighting" at Plaintiff's address in June 2020. *Id.* at PageID.1274. Genesee County dispatched Flint Township Officers McCallum and Poole to Plaintiff's residence on July 8, 2020, at 3:39 p.m. in response to the 9-1-1 call. ECF No. 103-4, PageID.1271; ECF No. 104-3, PageID.1444.

Defendant Officers arrived at Plaintiff's house by 4:02 p.m., when the temperature outside was 94 degrees Fahrenheit, with a heat index of 100 degrees. ECF No. 103-4, PageID.1273; ECF No. 104-2, PageID.1423. Officer Poole knocked on the home's front door to no answer.[3] ECF No. 106-2, PageID.1555. Officer McCallum walked onto a neighbor's yard to better look into Plaintiff's backyard. ECF No. 104-3, PageID.1452–1453. There, she observed littered across Plaintiff's backyard "trash and dog feces." ECF No. 106-2, PageID.1555. She also found the dogs strewn across the yard. *Id.* In her deposition, Officer

---

precludes him from contesting Defendants' presentation of facts concerning issues he plead the Fifth Amendment on during his deposition. Defendants' evidence on those issues is therefore accepted as fact in this case.

[3] Plaintiff later admitted to not being present when law enforcement arrived. ECF No. 104-2, PageID.1432; ECF No. 106-2, PageID.1555.

McCallum did not describe the dogs as "extremely thin" or otherwise looking underfed. *Id.* But she did not see any clean water, food, or airconditioned shelter from the extreme heat. *Id.*




Not knowing when the dogs' owner would return, Officer McCallum became concerned for the dogs' safety. ECF No. 106-2, PageID.1555. Defendant Officers entered Plaintiff's backyard without a warrant to better observe the dogs, believing they were in imminent danger. *Id.* at PageID1556. Officer McCallum

---

[4] Images of the backyard where Defendant Officers found the dogs. ECF No. 103-4, PageID.1275, 1277.

later explained that retrieving a warrant "would have just prolonged the dogs being outside in the heat." *Id.*

Once in Plaintiff's backyard, the Defendant Officers knocked on the home's backdoor. ECF No. 106-2, PageID.1556. Again, no one answered. *Id.* Officer McCallum began surveying the yard, discovering "a large plastic container filled with dirty green water" and two cooking pots "filled with dirty, bug ridden water" and "piles of spoiled dog food … covered in dirt and flies." ECF No. 103-4, PageID.1273. Defendant Officers moved towards the dogs, who barked and growled at them. ECF No. 106-2, PageID.1556. In response, they called Genesee County Animal Control to remove the dogs from the property, suspecting the animals were hostile. *Id.* at PageID.1555. Animal Control Officer Joe Lee arrived at 4:35 p.m. and began moving the dogs into his van. ECF No. 104-3, PageID.1456. At this point, approximately an hour passed since the 9-1-1 call. ECF No. 103-4, PageID.1273. While Defendant Officer Lee moved a third dog into the van, Plaintiff returned home. ECF No. 104-2, PageID.1436.

It is undisputed between the parties that tensions rose once Plaintiff appeared. He quickly became upset and angry upon arrival. ECF No. 104-2, PageID.1433. "Y'all aren't taking my dogs," Plaintiff said. *Id.* at PageID.1430. He began arguing with Defendant Officers, "pleading to them not to take [his] babies," as he fought back tears. ECF No. 104-2, PageID.1433. Officers

McCallum and Lee explained to Plaintiff that his dogs needed food, water, and shelter, so they had to go.  ECF No. 103-4, PageID.1273.  Plaintiff disputed that his dogs lacked water, pouring some into one of the dirty bowls Officer McCallum spotted earlier.  ECF No. 103-4, PageID.1273, 1280.

Plaintiff became increasingly angry, claiming "the animal rights activists were [messing] with him." *Id.* at PageID.1273.  He started unchaining one dog, as if to set it loose.  ECF No. 104-2, PageID.1429.  Officer McCallum unholstered her weapon in response.  ECF No. 104-3, PageID.1450.  She later expressed fear for her safety "that the dog was potentially going to charge at us and/or bite" other Defendant Officers.  *Id.* at PageID.1455.  Plaintiff asked: "So you're going to shoot me and the dogs?"  ECF No. 104-2, PageID.1430.  Officer McCallum warned him the dogs could be shot or darted if he freed them off their chains.  *See id.* at PageID.1435; ECF No. 104-3, PageID.1450.  She kept her gun unholstered for thirty seconds to a minute.  ECF No. 104-2, PageID.1431.  Only after Officer McCallum's warning did Plaintiff begin to assist the officers with loading the dogs into the Animal Control van.  *Id.* at PageID.1437.  Officer McCallum holstered her weapon after Plaintiff agreed to help.  *Id.* at PageID.1431.

Genesee County Animal Control Director Paul Wallace arrived on the scene just as the dogs finished loading into the van.  ECF No. 103-7, PageID.1291.  Defendant Wallace walked around the property with Plaintiff, explaining the basis

for confiscating the dogs.  *Id.* at PageID.1301.  Plaintiff objected to Defendant Wallace's confiscation rationale, repeating that his dogs had food, water, and shelter access.  At one point, Plaintiff pointed to a small metal pot containing "putrid looking … goulash" with flies swarming around it.  *Id.*  Plaintiff claimed the pot's substance was food for the dogs.  *Id.*  All Defendant Officers left Plaintiff's property shortly thereafter.



---

[5] Images of "food bowls" in the backyard where Officer Defendants found the dogs.  ECF No. 103-4, PageID.1278.

Animal Control took the dogs to a kennel facility in Genesee County, where they received medication.  ECF No. 103-7, PageID.1293.  Flint Township held the dogs in a "police hold" at the kennel facility, as evidence in a potential criminal case against Plaintiff.  *Id.*  Veterinary Doctor Terri McCormick treated the dogs at the kennel facility.  ECF No. 103-6, PageID.1288.  He found that they all had heartworm for at least four months prior to July 8, 2020.  *Id.*  One dog's heartworm became so severe that Genesee County Defendants transported it to the Michigan State University Veterinary facility.  *Id.*  The Michigan State doctors determined that euthanizing the dog was the best option.  *Id.*  The dog passed away later that year.

About a week after the July 8, 2020, incident, Flint Township Detective Lacey Lopez began investigating Plaintiff for animal cruelty.  ECF No. 104-6, PageID.1478–1479.  On July 23, 2020, Detective Lopez completed a warrant request for criminal charges against Plaintiff.  *Id.* at PageID.1480–1481.  Genesee County prosecutor Janet McLaren authorized a criminal complaint against Plaintiff on July 30, 2020, which she included in a warrant packet.  ECF No. 103-11, PageID.1318.  However, McLaren claims "a communication glitch" resulted in the warrant not being filed as intended by the Flint Township Police Department.  *Id.* McLaren did not learn about the "glitch" until Plaintiff commenced this action on November 11, 2020.  *Id.*  After McLaren re-sent Flint Township Police Department

-8-

the criminal complaint and warrant packet, law enforcement filed the criminal complaint on November 24, 2020, and the related forfeiture action on December 1, 2020. *Id.*

Plaintiff submitted an Amended Complaint on December 31, 2020, adding two additional counts, including a First Amendment retaliation claim in response to Defendants' criminal filing. ECF No. 18, PageID.212. On January 6, 2021, he filed a Second Motion for Preliminary Injunction, which this Court denied on February 9, 2021. ECF No. 51, PageID.645. The Court then granted Select Defendants David Leyton and Janet McLaren's Motion to Dismiss on July 29, 2021. *See Sanders v. Genesee Cnty. et al.*, No. 20-cv-13014, 2021 U.S. Dist. LEXIS 141530, at *2 (E.D. Mich. July 29, 2021). Discovery closed on February 14, 2022, and the parties submitted their cross motions for summary judgment ten days later. *See* ECF No. 94.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Federal Rule of Civil Procedure 56 permits parties to file a motion for summary judgment when a claim, counterclaim, or crossclaim is asserted against them. FED. R. CIV. P. 56(b). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Public officials are immune from suit unless they: (1) commit a constitutional violation; and (2) the constitutional right

violated was "'clearly established'" when the incident occurred.  *See Martin v. Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson*, 555 U.S. at 232).  Plaintiffs must satisfy both prongs "for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights.  If either prong is not satisfied, qualified immunity will shield the officer from civil damages."  *Id*. (citing *Pearson*, 555 U.S. at 236).  When the "legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."  *See McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010).

An immunity determination is incorporated into the Court's analysis of each count.  The Court must view the facts in the light most favorable to Plaintiff, who is asserting the injury.  If a genuine dispute of material fact exists regarding a clearly established right, summary judgment on immunity grounds will be denied.


## IV. DISCUSSION

The parties have each filed motions for summary judgment addressing all seven counts in Plaintiff's Amended Complaint.  All of Plaintiff's federal claims arise under Section 1983 for violations of the First, Fourth, and Fourteenth Amendments, as well as municipal liability.  In their respective motions, Plaintiff seeks summary judgment on three counts (Counts I, II, and IV), Genesee County

Defendants on five counts (Counts I, II, IV, and V), and Flint Township Defendants on all seven counts (Counts I, II, IV, V, VI, and VII).  Defendants seek entitlement to qualified or governmental immunity from all of Plaintiff's claims. The Court addresses each count below.

### A. Fifth Amendment

As a threshold matter, Defendants argue Plaintiff is precluded from presenting evidence on issues questioned about in his deposition where he asserted his Fifth Amendment right.   ECF No. 103, PageID.1233.   Plaintiff did not substantively respond to Defendants' Fifth Amendment arguments.

The Court agrees with Defendants.  Under the preclusive rule, "[a] defendant may not use the fifth amendment to shield [them]self from the opposition's inquiries during discovery only to impale [their] accusers with surprise testimony at trial." *United States v. Sixty Thousand Dollars in U.S. Currency*, 763 F. Supp. 909, 914 (E.D. Mich. 1991).  In *Sixty Thousand Dollars*, the court prohibited a defendant from waiving his privilege to testify, or "submit affidavits in opposition to the government's motion for summary judgment" after asserting his Fifth Amendment right in discovery.  *Id.*

This reasoning follows the Sixth Circuit's holding in *Traficant v. Comm'r of Internal Rev. Servs.*, 884 F.2d 258, 265 (6th Cir. 1989).   There, a taxpayer

appealed a United States Tax Court decision imposing a penalty for fraud due to the taxpayer's alleged failure to report bribes as income. *Id.* at 260. The Sixth Circuit found "it was proper under principles of reciprocity for the Tax Court to bar Traficant, once he had invoked the privilege against self-incrimination on the authenticity of the statement and the tapes, from introducing other evidence on that matter." *Id.* at 265. The court explained: "Such limits are properly within the scope of cases holding that a party to a civil litigant or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as they are not so high as to force abandonment of the privilege." *Id.* (citing *Spevack v. Klein*, 385 U.S. 511, 515 (1967)). Regarding the preclusive rule's scope, the court carefully noted that "when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits directly related to the scope of the asserted privilege." *Id.* (citations omitted).

Although *Traficant* was not decided at the summary judgment stage, courts in this district have applied the preclusive rule in the summary judgment context. *See, e.g.*, *Dunkin' Donuts Inc. v. Taseki*, 47 F. Supp. 2d 867, 874 (E.D. Mich. 1999) (precluding defendants from introducing evidence on an issue where the defendants asserted the Fifth Amendment). This Court also employs the preclusive rule "as a matter of fairness" and "under principles of reciprocity." *See Barrette*

-13-

*Outdoor Living, Inc. v. Mich. Resin Representatives*, No. 11-cv-13335, 2015 U.S. Dist. LEXIS 8936, at *12 (E.D. Mich. Jan. 27, 2015).

Here, Plaintiff asserted his Fifth Amendment privilege multiple times during his deposition. *See* ECF No. 103-14, PageID.1329–1330. (summarizing Plaintiff's Fifth Amendment assertions). For example, when asked whether he acquired one dog named Titan "for the purpose of dog fighting[,]" Mr. Sanders plead the Fifth Amendment. ECF No. 104-2, PageID.1417. When asked how he acquired the dogs, Plaintiff plead the Fifth Amendment. *Id.* When asked whether the dogs had "heartworm on July 8, 2020, because [he] neglected" them, Mr. Sanders again responded by asserting his Fifth Amendment privilege. *Id.* at PageID.1418, 1420. Mr. Sanders answered with the Fifth Amendment regarding any questions about how he treated the dogs, and his dogs' conditions the day Defendants seized them. *Id.* at PageID.1425. His silence invites "an adverse inference" in these proceedings. *Baxter v. Palmigiano*, 425 U.S. 308, 320 (1976). Accordingly, Plaintiff is barred from presenting any counter evidence concerning issues related to questions where he responded with his Fifth Amendment privilege.

**B. Fourth Amendment Claims**

The parties next move for summary judgment from Plaintiff's Fourth Amendment claims of unlawful search and seizure, and excessive force. The Court addresses each count separately.

**1. Unlawful Search and Seizure of Property (Count I)**

Plaintiff first argues Defendants unlawfully searched his backyard and seized the dogs. Defendants contend exigent circumstances made their search and seizure lawful. "Exigent circumstances exist when a reasonable officer could believe that there are 'real immediate and serious consequences' that would certainly occur were a police officer to 'postpone action to get a warrant.'" *Barton v. Martin*, 949 F.3d 938, 948 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). Courts "evaluate whether 'an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 n.1 (6th Cir. 2013) (quoting *Ewolski*, 287 F.3d at 501). Officers must have "a 'need for prompt action … and a conclusion that delay to secure a warrant would'" result in life threatening outcomes. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 490 (6th Cir. 2014) (quoting *Kovacic*, 724 F.3d at 695) (alterations adopted).

Examples of exigent circumstances include "the need to assist persons who are seriously injured or threatened with such injury," *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010), or an "ongoing danger to the health of [] animals[,]" *United Pet Supply*, 768 F.3d at 490.

"There is not a lot of law about the Fourth Amendment and dogs." *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 246 (6th Cir. 2017). What law does exist, demonstrates that "a dog is property" entitling its owner to Fourth Amendment protections. *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016); *see also Hardrick*, 876 F.3d at 246 ("[A]n officer's entry onto private property to seize a dog must obey the Fourth Amendment's strictures."). Without a warrant or a Fourth Amendment exception like exigent circumstances, government officers had no right to enter Plaintiff's yard and seize the dogs.

*United Pet Supply* is instructive here. In that case, the Sixth Circuit determined the exigent circumstances exception to the warrant requirement applies to the health and well-being of animals. *United Pet Supply*, 768 F.3d at 490. Defendants discovered "squalid" conditions in a pet store that created an ongoing health risk to the animals. *Id.* The court upheld the defendants' warrantless seizure because they reasonably believed the animals faced an emergency in the store because it was so hot, and some animals lacked food or water. *Id.* at 487. Under those conditions, any delay in seizing the animals could result in serious

harm to their health.  *Id.* at 491.  The court determined "a reasonable official could believe that the exigent circumstances justified the warrantless seizure of the animals."  *Id.* at 490.  The officials involved in the raid were thus entitled to qualified immunity from the Fourth Amendment claim.  *Id*

The Court finds that Defendant Officer McCallum encountered exigent circumstances, making her search and seizure of the dogs lawful.  Officers responded to an emergency 9-1-1 call about dogs suffering outside without shelter from 94 degree heat.  Before entering Plaintiff's property, Officer McCallum saw the dogs "in plain view" from a neighbor's yard.  *United Pet Supply*, 783 F.3d at 489–90 ("Under the plain-view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'") (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).  From there she encountered a hellish scene: dogs laying in a feces and trash filled yard, without water or food.  These conditions closely resemble the pet store in *United Pet Supply*, where the heat, lack of food and water access, and feces, justified a similar warrantless seizure.  *Id.* at 490–91.  Accordingly, Defendants made a lawful warrantless entry given the exigent circumstances.

Plaintiff avers nothing permits "a public safety officer" to "effectuate a warrantless seizure in the absence of imminent harm."  ECF No. 105,

PageID.1527.  Likewise, he argues "no exigency existed" that justifies Defendant Officers warrantless entry onto his property.  *Id.* at PageID.1521.  Instead, Defendants should have sought a warrant, Plaintiff claims, because no "immediate and serious consequences would have [] occurred."  *Id.*  Even if exigent circumstances existed, he continues, any emergency ended once Plaintiff returned home.  ECF No. 111, PageID.2182.

Sixth Circuit law is on point supporting Defendants' argument that exigent circumstances permitted the warrantless entry and dogs' seizure.[6]  *See United Pet Supply*, 768 F.3d at 490–91.  There is no factual dispute that the dogs faced imminent danger in the 94 degree heat, with only "putrid looking" subsistence and dirty water available.  ECF No. 103-7, PageID.1301.  Indeed, Defendants' prompt response helped treat heartworm found in all the animals, saving all but one of the dogs.  And while "[e]xigent circumstances terminate when the factors creating the exigency are negated[,]" the dogs remained threatened after Plaintiff arrived.  *Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 565 (6th Cir. 2006).  His arrival did not change the temperature outside, or the lack of food access.  As such, Defendants are entitled to qualified immunity from Count I of Plaintiff's Amended Complaint.

---

[6] Plaintiff's counsel concurred that *United Pet Supply* is controlling in this matter at the May 24, 2022, hearing.

## 2. Excessive Force (Count VII)

Next, Flint Township Defendants seek summary judgment from Plaintiff's excessive force claim: Count VII of his Amended Complaint. Plaintiff seems to suggest Officer McCallum acted with excessive force by unholstering her weapon. ECF No. 18, PageID.216–217.

Valid "seizures" can become "unreasonable" under the Fourth Amendment if officers use excessive force. *See Graham v. Connor*, 490 U.S. 386, 394, 397 (1989). Courts balance "the government's interest in preventing crime and protecting the public and the officers against a suspect's interest in avoiding injury" when deciding whether an officer used excessive force. *See Gambrel v. Knox Cnty., Ky.*, 25 F.4th 391, 400 (6th Cir. 2022) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). To aid its determination, the court looks at three factors to determine whether, in the totality-of-the-circumstances, force was reasonable: (1) "whether the officers were investigating a serious crime;" (2) "whether the suspect posed a safety threat; and" (3) "whether the suspect was resisting arrest." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Applying the *Graham* factors, the Court finds that Officer McCallum acted reasonably. First, Defendant Officers were investigating alleged animal abuse, a

serious crime.  Second, Plaintiff threatened to unleash a dog on Officer McCallum and her fellow officers.  This threat made Officer McCallum fear for her safety, supporting an inference that drawing her weapon was reasonable here.  *See, e.g.*, *Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 2000) (finding officers "act[] reasonable under the circumstances known to them [and] in defense of their own safety and the safety of officers through the use of deadly force.").  The third factor does not apply here because Officer McCallum did not arrest Plaintiff on July 8, 2020.  Moreover, Plaintiff fails to direct this Court to authority establishing a constitutional right that Officer McCallum violated with  her use of force.  Thus, no genuine issue of material fact exists in support of Plaintiff's excessive force claim.  Officer McCallum is entitled to qualified immunity from Count VII of Plaintiff's Amended Complaint.

### C. Fourteenth Amendment Procedural Due Process (Count II)

Defendants seek immunity from Plaintiff's procedural due process claim as well.  Plaintiff argues that Defendants violated his right to a deprivation hearing under the Fourteenth Amendment's Due Process Clause.  ECF No. 105, PageID.1524.  Plaintiff received "no hearing process whatsoever," he contends.  *Id.* at PageID.1525.  He argues that the failure to provide a post-deprivation hearing violated his procedural due process right.  *Id.* at PageID.1526.  Defendants

challenge Plaintiff's claimed property interest in the dogs and argue Plaintiff failed to exercise remedies available under Michigan law.  ECF No. 110, PageID.2160, 2163.

The Fourteenth Amendment's Due Process Clause forbids States from "depriv[ing] any person of life, liberty, or property[] without due process of law." U.S. Const. amend. XIV, § 1.  When faced with a procedural due process claim, courts engage in a two-step inquiry.  First, courts determine whether a constitutionally protected interest is at stake.  *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017).  Second, courts consider what procedures are necessary to protect that interest.  *Id.*  Because individuals possess property interests in their dogs, the Court focuses its analysis on the second step.  *See Hardrick*, 876 F.3d at 246.

Due process generally demands a hearing before the State deprives someone of their property or liberty.  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Courts generally apply the well-known *Matthews v. Eldridge* test when considering whether due process was afforded, considering: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (4) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional

or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).  But the Sixth Circuit has determined "failure to provide a pre-deprivation hearing does not violate due process" when animals face "an emergency situation."  *United Pet Supply*, 768 F.3d at 486 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1403–05 (6th Cir. 1994)).  "When the situation necessitates 'quick action' by the state or makes efforts to provide a meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate postdeprivation procedure."  *Harris*, 20 F.3d at 1401 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)).

As discussed *supra*, Section IV.B.1., the dogs' conditions here made Defendants' "quick action" necessary.  *Id.*  The dogs faced extreme heat, a lack of food and clean drinking water, which imperiled their lives.  These conditions justified Defendant Officers' warrantless search and seizure, making a pre-deprivation hearing unnecessary to comply with procedural due process.

Plaintiff also argues Defendants' failure to give him a post-deprivation hearing violated his procedural due process rights.  ECF No. 118, PageID.2284.  An undue delay in a post-seizure hearing can violate the due process clause.  *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 (1983).  "[T]here is no obvious bright line dictating

when a post-seizure hearing must occur." *Id.*   The right to a post-deprivation hearing is more akin "to a defendant's right to a speedy trial once an indictment or other formal process has issued." *Id.* at 564.   The Supreme Court in *$8,850* applied the speedy-trial factors from *Baker v. Wingo*, 407 U.S. 514, 530 (1972), which considers, on a case-by-case basis, the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *$8,850*, 461 U.S. at 564.

The Court finds that Plaintiff has not established a genuine issue of material fact supporting his post-deprivation Due Process Clause claim.   "[P]laintiffs need to show that Michigan offers no statutory or common law remedy" to succeed on a post-deprivation claim. *See Hardrick*, 876 F.3d at 247 (citing *Hudson v Palmer*, 468 U.S. 517, 534–36 (1984)).   In *Hardrick*, the Sixth Circuit discussed how Michigan law provides plaintiffs an opportunity to recover damages against defendants for harming their animals. *Id.*   Here, Defendants cite Michigan Court Rule 3.105, which allows for "Claim and Delivery" action in state court to recover "goods or chattels which have been unlawfully taken or unlawfully detained[.]" Plaintiff argues Michigan Court Rule 3.105 is inadequate because "it directly implicates Plaintiff's Fifth Amendment right[.]"   ECF No. 118, PageID.2284. While the Court can understand Plaintiff's concerns, Michigan Court Rule 3.105's existence sufficiently satisfies post-deprivation procedural due process.   The law

affords Plaintiff a post-deprivation process to recover the dogs, which satisfies constitutional due process requirements. *See Hardrick*, 876 F.3d at 247. The Court therefore finds Defendants entitled to qualified immunity from Count II of Plaintiff's Amended Complaint.

### D. First Amendment (Count VI)

Flint Township Defendants also seek entitlement to qualified immunity from Plaintiff's First Amendment retaliation claim. Plaintiff argues the temporal proximity between him filing suit and Flint Township commencing its criminal action creates a question of fact about whether Flint Township acted in response to Plaintiff's suit. Flint Township Defendants contend that criminal charges were under consideration long before Plaintiff initiated this lawsuit. ECF No. 104, PageID.1410. The Court agrees with Flint Township Defendants.

First Amendment retaliation claims have three elements:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Court recognizes "that retaliation rarely can be supported with direct evidence of intent." *Hazel v. Quinn*, 933 F. Supp. 2d 884, 888 (E.D. Mich. 2013) (citation omitted). Rather,

"[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate" when deciding whether a retaliation claim exists. *Thaddeus-X*, 175 F.3d at 399.

To survive summary judgment, plaintiffs must present evidence suggesting Defendants were "motivated in *substantial part* by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386 (emphasis added). While "temporal proximity between the protected conduct and the adverse action … may be significant enough to create an inference of retaliatory motive," *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (citing *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)), courts look to "the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn[,]" *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Retaliation claim inquiries utilize a burden shifting analysis as well. "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm … [i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

In the light most favorable to Plaintiff, the temporal proximity between the civil and criminal actions is insufficient for the retaliation claim to survive summary judgment. Flint Township Defendants cite evidence that law

enforcement began exploring criminal charges against Plaintiff in July 2020: at least three months before Plaintiff commenced this action.   ECF No. 104, PageID.1410.   That fact alone entitles Flint Township Defendants to prevail on summary judgment.  *See Thaddeus-X*, 175 F.3d at 399.  Thus, no genuine issue of material fact exists as to whether Defendants are entitled to qualified immunity from Plaintiff's First Amendment claim.  The Court will grant summary judgment to Flint Township Defendants from Count VI of Plaintiff's Amended Complaint.

### E. Municipal Liability (Count IV)

Next, the parties seek summary judgment regarding Count IV of Plaintiff's Amended Complaint—the municipal liability claim.  A Section 1983 claim against a local government entity must "demonstrate that the alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Morgan v. Wayne Cnty.*, Nos. 21-1411/1450, 2022 U.S. App. LEXIS 11935, at *15 (6th Cir. 2022).   Plaintiffs make this showing by demonstrating one of the following:

(1) the existence of an illegal official policy or legislative enactment;

(2) that an official with final decision making authority ratified illegal actions;

(3) the existence of a policy of inadequate training or supervision; or

(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'"  *Id.* (quoting *Monell*, 436 U.S. at 694).

The Court finds Defendants entitled to summary judgment from Plaintiff's *Monell* claim because he has not established any constitutional violations.  The alleged unconstitutional policy here is "failing to recognize constitutionally protected property ownership rights that are clearly outlined in the federal system and in the Federal Sixth Circuit Court of Appeals."  ECF No. 18, PageID.209.  Yet, as the Court discussed *supra*, Section IV.B.1., Defendant Officers performed a lawful search of Plaintiff's property and seizure of the dogs.  No genuine dispute of material fact remains on the issue.  Accordingly, Defendants are entitled to governmental and qualified immunity from Count IV of Plaintiff's Amended Complaint.

**F. Conversion (Count V)**

Defendants also seek summary judgment from Plaintiff's conversion claim.  Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  *Aroma*

*Wines & Equip, Inc. v. Columbian Distribution Services, Inc.*, 497 Mich. 337, 871

N.W.2d 136, 141 (2015) (quoting *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 239

N.W.2d 289, 291 (1960)).  Defendants seek entitlement to governmental immunity

from Plaintiff's tort claim.[7]  The Court agrees.

Michigan law affords government employees immunity from tort liability in

limited circumstances.  MICH. COMP. LAWS § 691.1407(2).  Officials are immune

from liability when they either "acted or reasonably believed they acted within the

scope of their employment, engaged in the discharge of a government function,

and their 'conduct did not amount to gross negligence that was the proximate cause

of the injury[.]'" *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quoting

MICH. COMP. LAWS § 691.1407(2)) (alterations adopted).   In the context of

intentional tort liability, a government official is immune if their conduct did not

amount to gross negligence.

The Court finds that Defendants' conduct never amounted to gross

negligence.  Defendant Officers acted swiftly to protect animals they reasonably

believed were endangered.  *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (requiring

"only an objectively reasonable basis for believing … that a person within the

---

[7] The only basis for this Court's jurisdiction over Plaintiff's conversion claim is
supplemental jurisdiction under 28 U.S.C. § 1367(c).  "[S]upplemental jurisdiction
is discretionary, not mandatory."  *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th
Cir. 2011).   In the interests of judicial economy, the Court will exercise
supplemental jurisdiction over Plaintiff's state law claim.

-28-

house is in need of immediate aid[.]").  Those fears later proved true, as all the dogs had heartworm, which resulted in one's death.  Defendants conduct thus did not amount to gross negligence, entitling them to governmental immunity from Plaintiff's tort claim.

In sum, Plaintiff left the dogs without adequate food, water, and shelter from 94 degree heat in a feces and trash filled yard.  ECF No. 104-2, PageID.1423. Although Plaintiff described the dogs as his "babies," an officer responding to remove children from such conditions is undoubtedly reasonable.  The Sixth Circuit has determined similar warrantless seizures are acceptable under the Fourth and Fourteenth Amendment in child removal situations.  *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010) ("Preventing imminent or ongoing physical abuse within a home qualifies as an exigent circumstance.").  Dogs are sentient creatures like humans; a fact that can justify the Government's warrantless seizure when dogs are found facing severe neglect.  *Cf. United Pet Supply*,  768 F.3d at 490 ("[T]he conditions of the [property] created an imminent and ongoing danger to the health of the animals.") (citing *Siebert v. Severino*, 256 F.3d 648, 657–58 (7th Cir. 2001)).  Accordingly, the Court finds Defendants entitled to summary judgment from all counts in Plaintiff's Amended Complaint.

**V. CONCLUSION**

For the reasons discussed herein, the Court will DENY Plaintiff's Motion for Summary Judgment [#105].

The Court will GRANT Genesee County Defendants' Motion for Summary Judgment [#103].

The Court will GRANT Flint Township Defendants' Motion for Summary Judgment [#104].

**IT IS SO ORDERED.**

Dated:  June 2, 2022            /s/ Gershwin A. Drain
                               GERSHWIN A. DRAIN
                               UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 2, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

-30-